IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 6, 2013

## JOHNNY TATE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 0708398    James M. Lammey, Jr., Judge**

_____

**No. W2012-01471-CCA-R3-PC  - Filed November 8, 2013**

_____

The Petitioner, Johnny Tate, appeals the Shelby County Criminal Court's denial of post-conviction relief from his convictions for two counts of especially aggravated kidnapping, two counts of aggravated robbery, and one count of aggravated burglary. On appeal, the Petitioner argues that both trial counsel and appellate counsel provided ineffective assistance of counsel by failing to challenge the especially aggravated kidnapping convictions on due process and double jeopardy grounds. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

R. Todd Mosley, Memphis, Tennessee, for the Petitioner-Appellant, Johnny Tate.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jessica A. Banti, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner was indicted by a Shelby County grand jury for two counts of especially aggravated kidnapping, two counts of aggravated robbery, and one count of aggravated burglary. The Petitioner was convicted as charged, and the trial court sentenced him to two sentences of life without parole, two twelve-year sentences, and one six-year sentence for the respective convictions. The Petitioner was ordered to serve the two life sentences consecutively to each other, with the remaining sentences to be served concurrently. This court affirmed his convictions. State v. Johnny Tate, No. W2008-02503-

CCA-R3-CD, 2010 WL 1839302 (Tenn. Crim. App. May 7, 2010), perm. app. denied (Tenn. Nov. 18, 2010).

**Trial.** This court summarized the evidence presented at trial in its opinion:

At approximately 7:45 p.m., the seventy-five-year-old victim, Larry Hassell, was in his front yard watering the lawn. He observed the [Petitioner] and a "well-dressed" black woman approach him. At first, Mr. Hassell was not alarmed, but he then observed that the [Petitioner] had a gun with a short barrel, resembling a .38, in his hand. The [Petitioner] proceeded to shove Mr. Hassell onto the concrete and told him to "get you M.F. into that carport," while holding the gun to his head. The [Petitioner] then demanded $5000, saying that he was a "dope head." The [Petitioner] then pulled Mr. Hassell up and shoved him back down to the ground "a couple of times." The [Petitioner] then asked who else was in the home, and Mr. Hassell informed him that his wife was upstairs. The [Petitioner], followed by his accomplice who was later identified as Brenda Robinson, forced Mr. Hassell into the home at gunpoint.

The group went into an upstairs television room, where Mrs. Hassell was sitting. The [Petitioner], upon entering, pointed the gun at her. He then demanded Mr. Hassell's wallet and pointed the gun at his head. While the [Petitioner] left the room to retrieve the wallet, Robinson kept the gun pointed at Mr. Hassell's head. Upon the [Petitioner]'s return, he demanded Mr. Hassell's ATM number and removed two credit cards. When Mr. Hassell explained that he did not have an ATM number, the [Petitioner] prodded him with the gun and said, "Give me that number you M.F. or I'm going to blow your brains out."

The [Petitioner] found electrical tape, telephone cords, and ropes throughout the house, and he then forced the Hassells to lie on their stomachs on the floor and proceeded to "hog tie" them. The [Petitioner] then held the gun to Mr. Hassell's head again and demanded to know where the safe was located. The [Petitioner] and Robinson then took turns ransacking the home, with the other remaining in the room with the gun pointed at the Hassells. The [Petitioner] repeatedly informed the Hassells that he would "blow their brains out" if they looked up. Both Mr. and Mrs. Hassell were in pain and were having a difficult time breathing.

At approximately 9:30 p.m., the Hassells heard the door to their residence slam. Mrs. Hassell was then able to free herself from her bindings

and then free her husband. Mr. Hassell grabbed his gun to pursue the [Petitioner] and Robinson, but they had already fled the scene in the Hassell's two Cadillac sports utility vehicles. Mr. Hassell then went to his neighbor's home and contacted the police and OnStar. The police arrived approximately five minutes later, and thirty minutes later the Hassells were informed that their cars had both been found at a residence in West Memphis. The Hassells also discovered that the [Petitioner] and Robinson had taken sets of dishes, a 1891 encased Whitney gun, china, silverware, televisions, a microwave, clothes, suitcases, steak knives, flashlight batteries, a 1921 silver dollar, and many other items. The estimated value of the items stolen was $100,000. Mr. Hassell provided police with a general description of the assailants, but he was later unable to provide a positive identification in a photo line-up.

The two vehicles were tracked by OnStar to 805 Walnut Street, the residence of the [Petitioner]'s mother. Upon arriving, investigators discovered that the stolen items were still located in the cars or scattered in the front yard. Additionally, inside one of the vehicles was a black purse which contained identification for Mr. Hassell and Robinson. The [Petitioner]'s mother consented to a search of the residence, but no items were found inside. Investigators ran a background check on Robinson and discovered that the [Petitioner] was her main associate.

In the days following the robbery, Jonesboro, Arkansas police officers arrested the [Petitioner] and Robinson on separate charges. The pair was arrested in front of a local Kroger. When arrested, the authorities discovered a 1921 silver dollar, later identified as belonging to the Hassells, in the [Petitioner]'s pocket. Additionally, the weapon used in the robbery of the Hassells was found lying on the ground between the [Petitioner] and the vehicle from which he was taken during the arrest. Authorities discovered that the [Petitioner] and Robinson had been staying at a local motel and obtained a search warrant. In the room, police found a pawn ticket for four sets of gold earrings, later identified as belonging to Mrs. Hassell. Police also learned that the [Petitioner]'s brother was renting the room beside the one rented by the [Petitioner] and Robinson. During their search, police noticed a Sears truck pull into the parking lot, stop and look, and then exit. Police stopped the truck and found that the [Petitioner]'s brother was driving. After being questioned, he was released.

Memphis police subsequently learned of the arrests of the [Petitioner] and Robinson and proceeded to question them. After being read his rights, the

[Petitioner] gave a detailed statement to police admitting his involvement but stating that he had forced Robinson to participate. He indicated that he saw Mr. Hassell on the front lawn, approached him with a weapon, and proceeded to force him into the home where he and Robinson stole numerous items, loaded them into the Hassell's vehicles, and then drove to a house belonging to the [Petitioner]'s mother. He further indicated that shortly after their arrival, he heard police approaching and left the area on foot, leaving behind the vehicles and the stolen items.

Johnny Tate, 2010 WL 1839302, at *1-2.

On March 10, 2011, the Petitioner filed a timely pro se petition for post-conviction relief. The Petitioner was subsequently appointed counsel, who filed three amended petitions on the Petitioner's behalf. The post-conviction hearing took place on July 6, 2012.

**Post-Conviction Hearing.** Trial counsel testified that he had been licensed to practice law since 1997. He stated that he was appointed to represent the Petitioner in January of 2008. He recalled that the State offered the Petitioner a plea deal of twenty-five or thirty years for the offense of especially aggravated kidnapping. Trial counsel said the Petitioner was in his fifties and declined the plea offer because it was the equivalent of a life sentence, and the matter proceeded to trial. Before trial, the State filed a notice that the Petitioner was a repeat violent offender and would receive a sentence of life without parole if convicted of especially aggravated kidnapping. A Shelby County jury ultimately convicted the Petitioner of all charges on September 11, 2008.

Trial counsel said he requested an investigator fairly early in the proceedings, approximately in January of 2008. He also filed a motion to suppress the Petitioner's statement to law enforcement, which he believed was litigated in the summer of 2008. Trial counsel met with the Petitioner on several occasions. He kept the Petitioner apprised of the charges and the proposed trial strategy. He said that both victims were unable to identify the Petitioner as the perpetrator, which was their only defense at trial. This defense strategy was supported by the fact that the Petitioner's brother physically resembled him and was apprehended near him. As a precautionary measure, trial counsel also requested a mental evaluation of the Petitioner fairly early in the proceedings. He called the Petitioner's mother as a defense witness to testify that the Petitioner's brother was in the vicinity when he was arrested. According to trial counsel, he and the Petitioner had a good relationship and got along well.

Trial counsel filed and argued the Petitioner's motion for a new trial but did not represent him on direct appeal. Trial counsel's assistant throughout trial served as the sole

-4-

appellate counsel. Trial counsel testified that he had considered the argument of whether the Petitioner's convictions for aggravated robbery and especially aggravated kidnapping violated his due process rights under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), overruled by State v. White, 362 S.W.3d 559 (Tenn. 2012), and its progeny. He consulted with other attorneys who did more appellate work than he did. In particular, he spoke with an attorney experienced in criminal appeals regarding the misidentification defense because he did not think the defense would succeed in light of the Petitioner's detailed statement to law enforcement. Trial counsel discussed the case and facts with the attorney he had consulted, and they tried to think of other defenses. Trial counsel stated that after consulting other attorneys, he decided not to raise the Anthony due process issue because he considered the issue to be without merit:

> I came to the conclusion that given the extended and protracted confinement of these elderly people, that the robbery and the kidnappings were very separate and extremely distinct. Given that these people were nearly 80 years old and Mrs. Hassell was infirm, I could not think of any reason why they needed to be tied up in the manner that they did. . . .

> I couldn't understand why, again, these old people were tied up when they could have easily just been put inside a room and really they weren't going to try to flee or they weren't capable of flight. So given that scenario, I believed that the crimes were separate and distinct.

Accordingly, trial counsel formed the opinion that the victims' confinement was beyond what was necessary to complete the robbery and the burglary. Trial counsel had also considered the factors found in State v. Richardson, 251 S.W.3d 438 (Tenn. 2008), overruled by State v. White, the controlling law at the time, and determined that the confinement of the victims prevented them from summoning help, lessened the Petitioner's risk of detention, and created a danger to the victims and increased their risk of harm.

On cross-examination, trial counsel stated that he probably raised sufficiency of the evidence and the failure to suppress the Petitioner's statement as issues in the motion for a new trial. He said he always raised sufficiency of the evidence even though it may have been frivolous in the Petitioner's case. Trial counsel testified that he was familiar with State v. Richardson, but that he was unfamiliar with footnote 6 of the case, which notes that the parties to that case did not raise the issue of double jeopardy analysis in the context of dual convictions for kidnapping and an accompanying felony. Trial counsel said he was familiar with double jeopardy principles but had not considered the issue in the Petitioner's case because he thought the crimes were separate and distinct. Finally, trial counsel agreed that

State v. White had "changed everything," but he thought the facts in White were distinguishable from the Petitioner's case.

Appellate counsel did not testify at the post-conviction hearing. The parties and the post-conviction court agreed that appellate counsel was limited by the issues raised in trial counsel's motion for a new trial.

The Petitioner testified that he filed a pro se petition claiming ineffective assistance of counsel. He said he had asked trial counsel to raise the Anthony due process issue regarding his dual convictions but that trial counsel did not think any relief on the issue was possible. The Petitioner stated that he had also discussed raising the issue on appeal with appellate counsel, but she was unresponsive to his request. He said he was familiar with double jeopardy and would have wanted that issue raised on appeal as well.

On cross-examination, the Petitioner said he asked trial counsel and appellate counsel to raise the Anthony issue and that he did not consent to the waiver of the issue on appeal.

At the conclusion of the proof, the post-conviction court made oral findings of fact and conclusions of law. On the same day, July 6, 2012, the court entered a written order denying post-conviction relief. The Petitioner filed a timely notice of appeal.

## ANALYSIS

The Petitioner argues that both trial and appellate counsel were ineffective by failing "to challenge especially aggravated kidnapping convictions for due process and double jeopardy violations." In response, the State argues that the post-conviction court properly found that trial and appellate counsel were not ineffective for failing to raise claims that they determined lacked merit. We agree that the Petitioner is not entitled to relief.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2010). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim

of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

First, the Petitioner argues that trial counsel and appellate counsel provided ineffective assistance by failing to challenge his convictions for especially aggravated kidnapping on due process grounds. He contends that because the appellate opinion in his case was issued around the same time as the Court of Criminal Appeals' opinion in State v. Jason Lee White, No. M2009-00941-CCA-R3-CD, 2010 WL 1930951 (Tenn. Crim. App. May 12, 2010), rev'd, 362 S.W.3d 559 (Tenn. 2012), trial and appellate counsel precluded his case from being reviewed by the Tennessee Supreme Court when they failed to raise the Anthony due process issue. The Petitioner asserts that but for counsels' prejudicial error, he would have received a different outcome.

The post-conviction court specifically held that the Petitioner was not entitled to relief for trial counsel's failure to raise a due process claim:

Well after I heard the testimony of [trial counsel] and after having heard the [Petitioner], I find that . . . I believe [trial counsel] over the [Petitioner]. He doesn't seem credible to me that he actually asked him to research the Anthony issue. . . . But be that as it may, [trial counsel] did consider the Anthony issue. Whether it was the [Petitioner] that asked him or whether or not it was on his [own] accord, he spoke to [an experienced appellate attorney] and came to the conclusion that the Anthony issue was without merit.

. . . [Trial counsel] testified that he was faced with a situation where the person had confessed to a home invasion robbery/kidnapping. And that his only defense was basically the fact that [the Petitioner] wasn't identified by either person, and he tried to have the statement of admission suppressed. He was unsuccessful in doing so.

. . . [Trial counsel] did not find the Anthony issue to be of any merit after discussing it with another attorney. So I don't believe that his errors were

-8-

so serious. In fact, I don't see where he made any errors. . . . But even so, if you want to assume that there was error, I don't believe that there would be a reasonable probability that the outcome would or even could have been different. . . . So I don't believe that counsel's performance prejudiced the [Petitioner], thereby denying him a fair trial. And I do not believe his performance fell below an objective standard of reasonableness.

We conclude that the record fully supports the post-conviction court's holding regarding trial counsel's failure to raise a due process challenge. The court accredited trial counsel's testimony and concluded that his performance was neither deficient nor prejudicial. Trial counsel testified that he was aware of the due process issue and had consulted with more experienced appellate attorneys. He subsequently concluded that, under State v. Richardson, the controlling law at the time, the due process challenge was not a viable claim given the facts of the Petitioner's case.[1] We agree with the post-conviction court that trial counsel's failure to raise a due process challenge at trial and in the motion for a new trial was reasonable and, therefore, did not constitute ineffective assistance of counsel.

Second, the Petitioner contends that both trial and appellate counsel were ineffective in failing to argue that the convictions for especially aggravated kidnapping violated double jeopardy. He claims that under the four-factor test established in State v. Denton, 938 S.W.2d 373, (Tenn. 1996), abrogated by State v. Watkins, 362 S.W.3d 530 (Tenn. 2012), the controlling law at the time, his aggravated kidnapping offenses should have merged with his aggravated robbery convictions. According to the Petitioner, trial and appellate counsel erred in omitting the double jeopardy issue, and the error prejudiced the outcome of his trial and direct appeal. Although not specified in the Petitioner's brief, post-conviction counsel relied on footnote 6 of State v. Richardson at the evidentiary hearing to argue that trial and appellate counsel should have addressed the double jeopardy issue in the context of the Petitioner's multiple convictions arising from one transaction.[2]

---

[1] We note that State v. White, the Tennessee Supreme Court's recent ruling requiring a specific jury instruction in certain kidnapping cases, is inapplicable to the instant case. The supreme court expressly stated that the decision "does not articulate a new rule of constitutional law or require retroactive application." Id. at 578. See, e.g., T.C.A. §§ 40-30-102(b)(1), -106(g)(1) (establishing as a potential ground for post-conviction relief the existence of a new constitutional right requiring retroactive application). See also State v. Cecil, ___ S.W.3d ___, No. M2011-01210-SC-R11-CD, 2013 WL 4046608, at *8 (Tenn. Aug. 12, 2013) (holding that the specific jury instruction in State v. White is applicable to pending actions on direct appeal at the time the opinion was filed, but not to collateral attacks).

[2] Footnote 6 of State v. Richardson states the following:

At the time of Anthony, this Court relied on the Blockburger double jeopardy test,

(continued...)

-9-

The post-conviction court held that the Petitioner was not entitled to relief for failure of the trial counsel to raise a double jeopardy claim. The court noted, "I think it asks too much of Defense Counsel to be clairvoyant about things that happen in the future based on dicta in a footnote. . . . That's really setting a high standard." We note that under Anthony and its progeny, which was the prevailing law from 1991 to 2012, the Tennessee Supreme Court considered double jeopardy analysis inadequate in the question of whether a kidnapping conviction could stand with a separate felony. The court in Anthony considered the double jeopardy question to be non-dispositive and irrelevant and chose to rely, instead, on the constitutional guarantee of due process. Anthony, 817 S.W.2d at 303-306, overruled by State v. White. Accordingly, it was reasonable under the prevailing professional norms for trial counsel to omit consideration of the double jeopardy claim. See Goad, 938 S.W.2d at 369. Moreover, trial counsel testified that he was familiar with double jeopardy principles but had not considered the issue because he believed the crimes charged in the Petitioner's case to be separate and distinct. We conclude that it is appropriate to defer to trial counsel's professional judgment in this instance. See Burns, 6 S.W.3d at 462. Accordingly, we agree with the post-conviction court's holding that trial counsel's failure to raise a double jeopardy claim was neither deficient nor prejudicial. The Petitioner is not entitled to relief on this issue.

We note that appellate counsel was not called as a witness at the post-conviction hearing. The post-conviction court, counsel for the State, and post-conviction counsel agreed that appellate counsel was limited on appeal by the issues raised in trial counsel's motion for

---

[2](...continued)
which required courts to examine the offenses to determine "whether each [statutory] provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); see Anthony, 817 S.W.2d at 303. We held in Anthony that the Blockburger double jeopardy test was not adequate to resolve the issue of whether a separate kidnapping conviction may be imposed because "[t]he essential elements of kidnapping and robbery are obviously separate and distinct, and simultaneous convictions on these two charges would not necessarily violate the rule in Blockburger." Id.

Five years later, in State v. Denton, 938 S.W.2d 373, 381 (Tenn.1996), this Court expanded the inquiry under double jeopardy principles to include a Blockburger analysis of the statutory elements, a comparison of the purpose of the respective statutes, and a fact-specific inquiry to determine the evidence available to prove each offense and whether there were multiple victims or discrete acts. The parties have failed to question either in this Court or in the Court of Criminal Appeals whether the Denton double jeopardy analysis would be an adequate substitute for the current Dixon due process inquiry. We leave that question for another day.

Richardson, 251 S.W.3d at 443, n.6, overruled by State v. White.

-10-

a new trial. The post-conviction court specifically held that appellate counsel did not provide ineffective assistance of counsel. We conclude that even if appellate counsel committed unprofessional errors, the Petitioner has failed to meet his burden in proving that the deficiencies prejudiced the defense. See Vaughn, 202 S.W.3d at 116; see also Goad, 938 S.W.2d at 370 (concluding that a court need not address both the deficiency and prejudice components if the Petitioner fails to establish one of the two components). The Petitioner establishes prejudice by demonstrating a reasonable probability that the outcome would have been different. Goad, 938 S.W.2d at 370. Here, the proof at trial and on appeal showed that the Petitioner searched the elderly victims' home for items with which to restrain them. He used electrical tape, telephone cords, and ropes to "hog tie" the victims. They remained on their stomachs in this position for about an hour while the Petitioner and his partner took turns watching over them and ransacking the home. After the Petitioner and his partner left, the victims were able to free themselves from their bindings. Under the previously applicable due process analysis, the proof is overwhelming that the victims' confinement exceeded that necessary to commit the accompanying felonies. Under a sufficiency of the evidence analysis, this court on direct appeal affirmed the Petitioner's convictions and concluded that "the proof more than sufficiently established all the elements of the requisite crimes." Johnny Tate, 2010 WL 1839302, at *4. Accordingly, there is serious doubt that raising due process or double jeopardy claims at trial or on appeal would have changed the outcome for the Petitioner. See Hicks, 983 S.W.2d at 245. We disagree with the Petitioner that the Tennessee Supreme Court would have reviewed his case if his trial and appellate counsel had challenged his aggravated kidnapping convictions on due process and double jeopardy grounds. Accordingly, he has not met his burden of proof and he is not entitled to relief.

We conclude that the record fully supports the post-conviction court's holding that "the Petitioner has failed to prove ineffective assistance of counsel. More specifically, he has failed to carry his burden of proof as to either deficient performance or prejudice." The Petitioner is not entitled to post-conviction relief.

## CONCLUSION

Upon review, we conclude that the Petitioner has failed to prove by clear and convincing evidence that he received ineffective assistance of counsel. The judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE